UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. 1:21-cv-5612

SERVICIOS PARLAMENTARIOS REMO, S.A. DE C.V.
a foreign Corporation

        Plaintiff,

v.

R D PRECIOUS METALS, INC.
RAFAEL DAVIDOV
RONI AMRUSSI (a/k/a RONI AMRUSI & RONI AMBRUSSI)
YANIV BEN HAMO (a/k/a YANIV BENHAMO) &
GOLD 7 OF MIAMI, INC.

        Defendants

-----------------------------------------------------------------------------X

## COMPLAINT

Plaintiff, SERVICIOS PARLAMENTARIOS REMO, S.A. DE C.V. ("SERVICIOS")

hereby sues Defendants R D PRECIOUS METALS, INC. ("RD Metals")  RAFAEL DAVIDOV

("Davidov"), RONI AMRUSSI (a/k/a RONI AMRUSI & RONI AMBRUSSI) ("Amrussi"),

YANIV BEN HAMO (a/k/a YANIV BENHAMO) ("Ben Hamo") and GOLD 7 OF MIAMI,

INC. ("Gold 7") (collectively, "RD Metals", "Davidov", "Amrussi", "Ben Hamo" and "Gold 7"

are "Defendants") for money damages and allege:

### NATURE OF THE ACTION

1. This action involves not only a breach of contract and claim for money had and

received by defendants R D Precious Metals Inc. and Rafael Davidov, but also a fraudulent

scheme involving the theft, conversion and misappropriation by defendants in New York of

1

funds and/or gold  belonging to plaintiff, the interstate transportation by defendants of the funds and/or gold which had been stolen, converted and/or misappropriated by defendants from plaintiff, and then using those funds and or gold to knowingly engage in, or attempting to engage in a monetary transaction in criminally derived property, the value of which was greater than $10,000.00 and which property was derived as the product of a scheme or artifice to defraud, or by means of false or fraudulent pretenses, representations or promises.

2. In or about June and July, 2018, Plaintiff, a Mexican Corporation, made a serious of gold purchases from the defendant, RD Metals, a New York gold dealer.  Plaintiff purchased a total of 75 Kilos of 24 Karat gold from the defendants RD Metals and Davidov , this at the agreed total price in the amount of  $3,097,687.00.   Plaintiff paid for these purchases in full by making wire transfers of funds to the New York bank account of the defendant, R D Metals.

3. Although defendant RD Metals did make an initial delivery to plaintiff of 25 Kilos of the plaintiff's gold purchases, defendants RD Metals and Davidov failed and refused to deliver the remaining 50 Kilos of gold purchased by plaintiff, this notwithstanding repeated demands for same by plaintiff..

4. Thereafter, in furtherance of a scheme and plan to make illegal purchases of diamonds at below market prices, defendants acting together, converted and misappropriated the funds and/or gold belonging to Plaintiff which was in the possession of defendants RD Metals and Davidov, and then made interstate transfers of such funds or gold, either by wire transfer or other means to other of the defendants in Florida whereupon defendants jointly, in furtherance of their common scheme or plan, used those funds to make illegal purchases of diamonds or other property,

2

5.   The diamonds or other property which defendants purchased or acquired with the money or gold converted, stolen and/or misappropriated by them from Plaintiff, was then used by defendants to make substantial illegal purchases or acquisitions of diamonds and/or other property, which diamonds and/or other property had been stolen, misappropriated or acquired through a fraudulent and unlawful scheme.

6. Upon information and belief, defendants, using the funds or property which had been converted, stolen and/or  misappropriated from plaintiff, made substantial illegal purchases of diamonds and/or other property  at prices substantially below the fair market value of those diamonds and/or other items of property.

7.   As a consequence of the foregoing, plaintiff has sustained damages totaling in excess of $3,018,950.00.

8.   Accordingly, this is an action (a) for breach of contract; (b) for conversion and misappropriation; (c) for money had and received; (d) for violation of the Federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"; and (e) for various common law and statutory causes of action based on defendants' fraud.  Plaintiff brings this action against defendants for compensatory damages and punitive damages arising from their fraudulent and dishonest conduct and actions and their operation of a corrupt enterprise.

## THE PARTIES

9.   Plaintiff, Servicios is a corporation formed and existing under the law of the nation of Mexico, with offices located in Coyoacan, Mexico.

10.   Defendant RD Metals is a corporation formed and existing under the laws of the State of New York with offices located at 15 West 47th Street, New York, New York 10036.

3

Upon information and belief, at all times RD Metals was and still is a licensed and authorized dealer in gold.

11.   Upon information and belief, defendant Davidov is a resident of the State of New York and conducts business in the State of New York.

12.   Upon information and belief, defendant Amrussi is a resident of both the State of New York and the State of Florida; maintains a residence at 5 Lake Road, Great Neck New York and conducts business in the State of New York.

13.   Upon information and belief, defendant Ben Hamo is a resident of the State of Florida.

14.   Upon information and belief, defendant Gold 7 is a corporation formed and existing under the laws of the State of Florida and maintains offices at 68 NE 1st Street, Miami, Florida.

15.   Upon information and belief, Amrussi was at all relevant times, an officer, director and/or shareholder of Gold7 and/or maintained a concealed, undisclosed and/or beneficial interest in Gold7 and/or exercised and/or maintained management and control over the actions and conduct of Gold7

16.   Upon information and belief, Ben Hamo was at all relevant times, an officer, director and/or shareholder of Gold7 and/or maintained a concealed, undisclosed and/or beneficial interest in Gold7 and/or exercised and/or maintained management and control over the actions and conduct of Gold7

## JURISDICTION AND VENUE

17.   The breach of contract, theft, conversion and misappropriation by defendants of plaintiff's gold, monies and other property occurred within the State of New York, this as part of, and in furtherance of a common scheme or plan on the part of all defendants acting together for

the purpose of providing defendants with the funds necessary for defendants to be able to make illegal purchases of stolen or misappropriated diamonds.

18. This Court has personal jurisdiction over defendants pursuant to N.Y.C.P.L.R. § 301. To the extent that any defendant is not located in the State of New York, this Court also has personal jurisdiction pursuant to N.Y.C.P.L.R. § 302(a) because this action arises out of the transaction of business in the State of New York and defendants committed a tortious act in the State of New York.

19. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

20. In addition, the Court has federal question jurisdiction over the RICO claims in this action pursuant to 18 U.S.C § 1964 (a), 28 U.S.C. § 1331, 18 U.S.C. § 2314, 18 U.S.C. § 2315, 18 U.S.C. 1962, 18 U.S.C. 1957 and over the remaining claims pursuant to 28 U.S. C. § 1367 (a).

21. Venue is proper in this District as the cause of action arose in this district and pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this District.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT AND MONEY HAD AND RECEIVED

22. Plaintiff is a Mexican corporation engaged in the business of purchasing, selling and investing in diamonds, jewelry and precious metals.

23. Defendants RD Metals and Davidov are engaged as wholesale dealers in gold and other precious metals.

24. Sometime in or prior to June 2018, plaintiff's representative met and/or spoke with defendants RD Metals and Davidov and entered into an agreement with said defendants pursuant to which agreement plaintiff agreed to make purchases from said defendants and said defendants agreed to sell to plaintiff at the then prevailing market price, large quantities of gold for delivery to plaintiff in New York. It was understood and agreed that in conjunction with each such purchase, defendants would issue an invoice to plaintiff and that upon receipt of same, that plaintiff would make payment to defendant in the full amount of the invoice, this by wire transfer from Mexico to defendants' bank account in New York.

25. It was further agreed that upon receipt of payment for the gold, that said defendants would then deliver physical possession of the gold to plaintiff or to plaintiff's representatives in New York.

26.  As requested by said defendants, plaintiff and plaintiff's principals provided to defendants all documentation and other information requested by defendants in order that defendants would be able to comply with all applicable laws, rules and regulations concerning all aspects of the contemplated gold purchases, including but not limited to compliance by defendant with the applicable federal anti-money laundering rules and regulations.

27. On or about June 13, 2018, plaintiff agreed to purchase from said defendants and defendants agreed to sell to plaintiff 15 Kilos of 24 Karat gold, this at an agreed price in the amount of $630,240.00. In furtherance thereof, Defendants invoiced plaintiff for the purchase of this gold, and plaintiff then promptly paid to defendants to agreed price in the amount of $630,240.00  via a wire transfer in U.S. Dollars to defendants' bank account in New York.

28. On or about June 18, 2018, plaintiff agreed to purchase from said defendants and defendants agreed to sell to plaintiff 20  Kilos of 24 Karat gold, this at an agreed price in the

6

amount of $823,893.00.  In furtherance thereof, defendants invoiced plaintiff for the purchase of this gold, and plaintiff then promptly paid to defendants to agreed price in the amount of $823,893.00  via a wire transfer in U.S. Dollars to defendants' bank account in New York.

29.  On or about June 25, 2018, plaintiff agreed to purchase from defendants and defendants agreed to sell to plaintiff an additional 20 Kilos of 24 Karat gold, this at an agreed price in the amount of  $828,726.00.  In furtherance thereof, defendants invoiced plaintiff for this purchase and plaintiff then promptly paid to defendants to agreed price in the amount of $828,726.00  via a wire transfer in U.S. Dollars to defendants' bank account in New York.

30.  On or about July 2, 2018, plaintiff agreed to purchase from defendants an additional 20 Kilos of 24 Karat gold, this at an agreed price in the amount of $814,828.00.  In furtherance thereof, defendants invoiced plaintiff for this purchase and plaintiff then promptly paid to defendants to agreed price in the amount of $814,828.00  via a wire transfer in U.S. Dollars to defendants' bank account in New York.

31.  On or about August 17, 2018, plaintiff agreed to purchase from defendants an additional 20 Kilos of 24 Karat gold, this at an agreed price in the amount of $850,000.00.  In furtherance thereof, defendants invoiced plaintiff for this purchase and plaintiff then promptly paid to defendants to agreed price in the amount of $850,000.00  via a wire transfer in U.S. Dollars to defendants' bank account in New York.

32.  With regard to all of the aforesaid purchases, defendants agreed that upon receipt of payment from Plaintiff, that the gold purchased by plaintiff would be delivered by defendants, at the option of plaintiff to  either plaintiff or to plaintiff's representative in New York.

33.  Although defendants did make an initial delivery to plaintiff of 25 Kilos of  the gold purchased by plaintiff from defendants, defendants did thereafter fail and refuse to release and

7

deliver to plaintiff the remaining 50 Kilos of gold which plaintiff had purchased from defendants and for which, plaintiff had paid defendants in full. .

34. In furtherance of their scheme to defraud plaintiff and to convert and misappropriate plaintiff's money, gold or other property, defendants claimed that they were prohibited from making any further deliveries of defendants gold to defendant in New York and thus, defendants failed and refused to released and deliver to plaintiff the remaining 50 Kilos of gold which had been purchased and paid for by plaintiff.

35. In response to defendants' refusal to release and deliver the remaining 50 Kilos of gold to plaintiff, plaintiff made repeated demands upon defendants to immediately sell any gold hat defendants immediately undertake to sell plaintiff's 50 Kilos of gold at the then current market price, and to then refund and return to plaintiff the proceeds of such sale and liquidation.

36. Upon information and belief, while defendants may have sold and liquidated plaintiff's 50 Kilos of 24 Karat gold, , and rather than refunding plaintiff's monies and rather than refunding to plaintiff the proceeds of such sales or liquidations, defendants instead, and acting together, utilized some or all of the proceeds from the sale of plaintiff's gold in furtherance of a scheme or plan on the part of all defendants to engage in the illegal purchase of a parcel of approximately 53 fraudulently obtained gem quality diamonds, this at substantially below market prices. .

37. As a result thereof, defendants have breached their contract of sale and agreement with plaintiff, thereby resulting in plaintiff having sustained damages in the amount of $3,947,687.00.

## RICO CLAIMS

38.  Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39.  Upon information and belief, unbeknownst to plaintiff, and without plaintiff's consent, defendants RD Metals, Davidov, Amrussi, Ben Hamo and Gold 7 illegally stole, converted and/or misappropriated the monies and/or gold belonging to plaintiff and which were in the possession and control of RD Metals and Davidov and illegally transferred those funds and/or gold holdings to accounts of the defendants in Florida, wired or otherwise transferred those funds or gold to defendants in Florida whereupon other of the defendants utilized the monies and/or gold converted, misappropriated and/or stolen from plaintiff in furtherance of an illegal plan or scheme involving defendants' purchase of diamonds directly or indirectly from or through a company by the name of Natural Diamonds Investment Co. a Florida corporation and/or from entities or individuals affiliated with, or related to Natural Diamonds Investment Co.

40.  The diamonds purchased from or through Natural Diamonds Investment Co. had been acquired by them through a series of fraudulent, dishonest and illegal schemes and acts, all of which, upon information and belief, was known to, or which should have been known to defendants.

41.  Utilizing the funds which they had converted, stolen and misappropriated from plaintiff, defendants proceeded to make purchases from Natural Diamonds Investment Co of approximately 53 gem quality diamonds, all at prices which were, and which were known by defendants to be at substantially below market prices and substantially below the fair and reasonable value of said diamonds.

9

42. Upon information and belief, defendant Gold 7 then proceeded to take possession of the aforesaid diamonds which defendants had purchased or acquired from or through Natural Diamonds Investment Co.

43. Thereafter, in an action in the United States District Court for the Sothern District of Florida styled "Securities and Exchange Commission v Natural Diamonds Investment Co. et. al, Case No. 19-cv-80633 ("Florida Federal Court Action"), the United States Securities and Exchange Commission brought an action against defendants Gold 7 to recover possession from Gold 7 of the aforesaid diamonds, said action having been brought by them on behalf of, and for the benefit of the creditors and victims of the fraudulent, dishonest and illegal actions and conduct of Natural Diamonds Investment Co.

44. On or about October 5, 2020, defendant Ben Hamo, as the purported "Managing Member" of the defendant Gold 7, were required to and did in fact forfeit and surrender ownership and possession to the Receiver in the Florida Federal Court action of the diamonds and other property which they had received improperly, illegally and/or fraudulently obtained from or through Natural Diamonds Investment Co.

45. The conduct and actions of defendants as aforesaid have caused plaintiff to sustain damages in an amount not less than $3,947,687.00.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Violation of 18 U.S.C. § 1962(c) )

46. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. Defendants RD Metals, Davidov, Amrussi, Ben Hamo and Gold 7 are an Enterprise within the meaning of 18 U.S.C. § 1961 (4) whose activities affect interstate commerce. The individual defendants are either employed by, are shareholders, managers or members of, or

10

exercise control over the financial affairs of the corporate defendants and the Enterprise formed and operated by them.

48.  The defendants operated through a pattern of racketeering activity and were associated together and functioned together for a common unlawful purpose as set forth below and all participated in the management of the racketeering enterprise.

49.  Each individual is a person within the meaning of 18 U.S.C. § 1961 (3) and directed or participated in the affairs of the enterprise within the meaning of 18 U.S.C. § 1962 (c) .

50 . Defendants conspired together to engage in a pattern of racketeering activity on or about and after June 2018 and thereafter with the intention to defraud plaintiff by devising a scheme and artifice to use money or property belonging to plaintiff and in the possession of the defendant RD Metals, to procure and make illegal investments in, and purchases of stolen diamonds, this for their own personal gain and profit.

51.  The scheme was carried out through multiple actions and acts from on or about June 2018, when defendants converted and misappropriated funds belonging to plaintiff.

52.  The fraudulent actions of the defendants, including the theft, misappropriation and conversation of plaintiff's funds and/or gold, the  illegal and improper transfer of funds belonging to plaintiff from New York to Florida and defendants participation in a plan or scheme involving their purchase of diamonds which had been fraudulently and illegally acquired, constitute violations of , constitute wire fraud in violation of 18 U.S.C. § 1343, 18 U.S.C § 1964 (a), 28 U.S.C. § 1331,  18 U.S.C. § 2314,  18 U.S.C. § 2315, 18 U.S.C. 1962, 18 U.S.C. 1957 and over the remaining claims pursuant to 28 U.S. C. § 1367 (a). and constituted a conspiracy to commit the offenses of having devised  a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses; having transported in interstate commerce,

11

monies or property of the value of more than $5,000.00, knowing same to have been stolen,

converted or taken by fraud; having received, possessed, concealed, stored, bartered, sold or

disposed of merchandise or money valued in excess of $5,000.00 which have crossed state lines

after being stolen, unlawfully converted or taken, and knowing the same to have been stolen,

unlawfully converted, or taken; having received income or property derived, directly or

indirectly from a pattern of racketeering activity; having knowingly engaged in a monetary

transaction in criminally derived property that is of a value greater than $10,000,00; and having

engaged in illegal wire transfers or bank fraud,

53. Through the commission of illegal predicate acts, defendants engaged in a pattern of

racketeering activity between June 2018 and the present date, affecting interstate commerce as

defined by 18 U.S.C. § 1961 (5) and other applicable laws.

54. Plaintiff has been injured in its business and property by reason of defendants'

violation of 18 U.S.C. § 1962 and demand judgment in an amount to be determined at the time of

trial, together with threefold damages, costs of suit and reasonable attorney's fees in accordance

with the provisions of 18 U.S.C. § 1964.

## AS AND FOR A THIRD CLAIM FOR RELIEF
(Violation of 18 U.S.C. § 1962 (d)

55. Plaintiff repeats, reiterates and reallege each and every allegation set forth in

paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Defendants activities as aforesaid, affect both interstate and foreign commerce.

57. Defendants acquired and maintained an interest in and control of the enterprise

through a pattern of racketeering activity.

58. The racketeering activity set forth hereinabove constitutes a pattern of racketeering

activity pursuant to 18 U.S.C. § 1961(5)

59. Defendants have directly or indirectly acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962 (b).

60. As a direct and proximate result of defendants' racketeering activities and violations of 18 U.S.C. § 1962(b) , plaintiff has been injured in its business and property, compelling it, inter alia, to accumulate debt to make up for the shortfalls in funds caused by defendants' actions.

61. Plaintiff has been injured in its business and property by reason of defendants' violation of 18 U.S.C. § 1962 and this entities plaintiff to threefold damages, costs of suit and reasonable attorney's fees in accordance with the provisions of 18 U.S.C. § 1964 b

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, SERVICIOS PARLAMENTARIOS REMO, S.A. DE C.V., respectfully demands judgment against defendants jointly and severally as follows:

(a) On the first claim for relief, a judgment against defendants RD Metals, Davidov, Amrussi, Ben Hamo and Gold 7 in an amount to be determined at trial but in no event less than the sum of $3,947,687.00,  together with threefold damages, costs of suit and reasonable attorney's fees.

(b) On the second claim for relief, a judgment against defendants RD Metals, Davidov, Amrussi, Ben Hamo and Gold 7 in an amount to be determined at trial but in no event less than the sum of  $3,947,687.00  together with threefold damages, costs of suit and reasonable attorney's fees.

(c ) On the third claim for relief, a judgment against defendants RD Metals, Davidov, Amrussi, Ben Hamo and Gold 7 in an amount to be determined at trial but in no event less than

the sum of $3,947,687.00, together with threefold damages, costs of suit and reasonable attorney's fees.

(d)  Punitive Damages in an amount to be determined by the Court at the time of trial.

(e) Interest, costs and disbursements and reasonable attorneys fees in connection with the prosecution of this action.

(f) Such other, further and different relief as to this Court may seem just, proper and equitable.

Dated: Lawrence, New York
       June 15, 2021

KINZLER LAW GROUP , PLLC
Attorneys for Plaintiff

By:
BEN KINZLER Esq. (BK-2696)
30 Merrall Drive
Lawrence, New York 11559
(212) 804-8111
bk@kinzlerlaw.net

14